ANTHONY E. PAGKAS, State Bar No. 186112
CHRISTOPHER J. D'ANJOU, State Bar No. 234299
PAGKAS LAW FIRM
75 E. Santa Clara St., Suite 1210
San Jose, CA 95113
Telephone: (408) 291-5401
Fax: (408) 291-5302

Attorneys for Plaintiffs

FILED

2007 JUL 27 P 3: 03

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S.J.

E-FILING

UNITED STATES DISTRICT COURT

IN AND FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER HINMAN, CAROLE MIRRASOUL, <br><br> Plaintiffs, <br><br> vs. <br><br> SAN JOSE POLICE OFFICER C. PROFT (BADGE NO. 2966), SAN JOSE POLICE OFFICER ARCHER (BADGE NO. 3096), SAN JOSE POLICE OFFICER D'ARRIGO (BADGE NO. 3139), SAN JOSE POLICE OFFICER STRUNK (BADGE NO. 2626), SAN JOSE POLICE SERGEANT KNIEVES (BADGE NO. 3144), SAN JOSE POLICE DEPARTMENT, CITY OF SAN JOSE, AND DOES 1-200 <br><br> Defendants. | Case No. 07-3862-HRL <br><br> **COMPLAINT FOR DAMAGES: 42 U.S.C. § 1983; ASSAULT AND BATTERY; USE EXCESSIVE FORCE; NEGLIGENCE; NEGLIGENT SUPERVISION AND TRAINING; NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS** <br><br> ~~DEMAND FOR JURY TRIAL~~ |

## INTRODUCTION

1. This is an action for money damages brought pursuant to 42 U.S.C. §§1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution, and under the statutory and common law of the State of California, against SAN JOSE POLICE OFFICER C. PROFT (BADGE NO. 2966), SAN JOSE POLICE OFFICER ARCHER (BADGE NO. 3096), SAN JOSE POLICE OFFICER D'ARRIGO (BADGE NO. 3139),

1

COMPLAINT

SAN JOSE POLICE OFFICER STRUNK (BADGE NO. 2626), and SAN JOSE POLICE SERGEANT KNIEVES (BADGE NO. 3144), police officers of the CITY OF SAN JOSE, in their individual capacities and against the CITY OF SAN JOSE and the Municipalities Police Department.

2. It is alleged that individual police officer defendants made an unreasonable seizure of the person CHRISTOPHER HINMAN, used unreasonable and excessive force in the arrest and detention of the person CHRISTOPHER HINMAN, violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution, and that these defendants assaulted and battered CHRISTOPHER HINMAN. It is further alleged that these violations and torts were committed as a result of policies and customs of the CITY OF SAN JOSE.

## JURISDICTION

3. Jurisdiction is based on 28 U.S.C. §§1331 and 1343 and on the pendant jurisdiction of this Court to entertain claims arising under state law. This court has original jurisdiction over the claims herein because they arise under the Constitution and laws of the United States.

## PARTIES

4. CHRISTOPHER HINMAN was at all material times a resident of San Jose, California, and of full age.

5. CAROLE MIRRASOUL was at all material times a resident of San Jose, California and of full age.

6. Defendant Officers were at all times relevant to this complaint duly appointed and acting officers of the police department of the CITY OF SAN JOSE, acting under the color of law, to wit, under color of the statutes, ordinances, regulations, policies, customs, and usages of the State of California and/or the CITY OF SAN JOSE.

7. Plaintiff are not aware of the true names and capacities of the defendants sued herein as DOES 1-200, inclusive and therefore sue these defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when

ascertained. Plaintiff allege that each of these defendants was the agent, principal, partner, joint venturer, and/or employee of each of the remaining defendants and in doing the acts and omissions alleged in this complaint, each was acting within the course and scope of said agency, venture, and employment, and each defendant authorized and ratified the acts of each other defendant. Plaintiff further allege that each of the fictitiously named defendants is responsible in some manner for the occurrences herein alleged, and that Plaintiffs' injuries, herein alleged, were proximately caused by the negligence or intentional acts of these defendants.

**FACTUAL ALLEGATIONS**

8. On or about July 27, 2005, around 7:00 p.m. plaintiff CAROLE MIRRASOUL contacted 911 as her son CHRISTOPHER HINMAN was suffering from agitation due to a medication imbalance. She specifically requested a CIT officer, but none ever responded that night. A CIT officer is a member of the "Crisis Intervention Team" and has specific training in dealing with individuals with mental issues.

9. On the day of the alleged incident, CHRISTOPHER HINMAN was a young, vibrant twenty year old, who stood at 5' 9" and weighed 140 pounds. He was in a heavily medicated state on the day of the incident, as he takes a number of medications to deal with his mental issues.

10. Prior to the incident alleged herein, plaintiffs are informed and believe and on the basis of that belief allege that on three prior occasions, CIT trained San Jose Police Officers came to the residence of plaintiff CAROLE MIRRASOUL to assist in getting plaintiff CHRISTOPHER HINMAN to EPS. On said prior incidents, CHRISTOPHER HINMAN was transported safely to EPS without incident or altercation with the responding police officers.

11. When the defendant officers and each of them arrived at plaintiffs' residence, they entered the property of CAROLE MIRRASOUL with their guns drawn. The defendant officers and each of them were met by CHRISTOPHER HINMAN's grandfather, Stanley Rose. Confused by the sight of police officers with drawn guns, Stanley Rose asked what

3

COMPLAINT

|   |     |   |
|---|-----|---|
| 1 |     | they were doing and reported that his grandson was inside the house. Stanley Rose |
| 2 |     | further communicated to the defendant officers and each of them that CHRISTOPHER |
| 3 |     | HINMAN had recent jaw surgery, and to be careful and mindful of that fact. |
| 4 | 12. | When the defendant officers and each of them entered the residence of CAROLE |
| 5 |     | MIRRASOUL, CHRISTOPHER HINMAN was inside of his bedroom putting on his |
| 6 |     | shoes. He was in a heavily medicated, excited and agitated state, and the defendant |
| 7 |     | officers and each of them told him to "hurry up." |
| 8 | 13. | When the defendant officers and each of them contacted CHRISTOPHER HINMAN, |
| 9 |     | they immediately restrained him by placing "zip-ties" around his wrists and behind his |
| 10 |    | back. He was brought out of his bedroom and commanded to sit on the couch. |
| 11 |    | CHRISTOPHER HINMAN complied and cooperated with the defendant officers' |
| 12 |    | commands. |
| 13 | 14. | CAROLE MIRRASOUL spoke to the defendant officers and each of them about |
| 14 |    | CHRISTOPHER HINMAN'S medicated state. She showed them some broken pottery |
| 15 |    | and kitchen utensils scattered on the kitchen floor which CHRISTOPHER HINMAN had |
| 16 |    | previously caused. CAROLE MIRRASOUL requested to the defendant officers and each |
| 17 |    | of them that her son be brought to EPS. |
| 18 | 15. | The defendant officers and each of them, then contacted CHRISTOPHER HINMAN and |
| 19 |    | told him that "he was sick of his medication issue" and that "he was going to jail." |
| 20 |    | CAROLE MIRRASOUL communicated to defendant officers that CHRISTOPHER |
| 21 |    | HINMAN had attempted to cut himself that day and made the statement that he "wanted |
| 22 |    | to die." Again, she requested that her son be taken to EPS. |
| 23 | 16. | The defendant officers and each of then told CHRISTOPHER HINMAN that he was |
| 24 |    | either going to go to jail or the hospital. Defendant OFFICER PROFT then removed his |
| 25 |    | collapsible baton and told CHRISTOPHER HINMAN that he would get hurt if he tried to |
| 26 |    | fight the officers. |
| 27 | 17. | Defendant OFFICERS D'ARRIGO and PROFT then forced CHRISTOPHER HINMAN |
| 28 |    | to stand up and then OFFICER D'ARRIGO placed CHRISTOPHER HINMAN into a |

COMPLAINT

    rear wrist lock. Defendant OFFICER PROFT had his arm on CHRISTOPHER HINMAN's right arm. CHRISTOPHER HINMAN was then removed toward the front door of his residence. CHRISTOPHER HINMAN complied with the defendant officers' physical control. CHRISTOPHER HINMAN then communicated to the officers that he was getting dizzy. He then started to collapse.

18. As CHRISTOPHER HINMAN started to collapse, the defendant officers and each of them pulled his hair back and he was placed in a "carotid restraint." CHRISTOPHER HINMAN's glasses fell to the floor and broke. CHRISTOPHER HINMAN was struck in the jaw by the defendant officers and each of them, causing injury to CHRISTOPHER HINMAN's jaw. The defendant officers and each of them then pressed their full body weight on CHRISTOPHER HINMAN. The defendant officers and each of them then grabbed CHRISTOPHER HINMAN's pant legs, picking him up and out of the residence.

19. CHRISTOPHER HINMAN was then thrown onto his feet. Again, the defendant officers and each of them told CHRISTOPHER HINMAN that he was going to jail. CHRISTOPHER HINMAN was placed in a police vehicle and requested that he say goodbye to his mother and attempted to do so.

20. The defendant officers and each of them grabbed CHRISTOPHER HINMAN and slammed his head repeatedly onto the police vehicle. The defendant officers and each of them kicked CHRISTOPHER HINMAN's legs causing him to fall to the ground. While falling, CHRISTOPHER HINMAN's leg purportedly grazed a defendant officer.

21. While on the ground, the defendant officers and each of them mashed and grinded CHRISTOPHER HINMAN's face into the ground. The ground around the plaintiff's residence had been recently covered with gravel.

22. While on the ground, the defendant officers and each of them kicked CHRISTOPHER HINMAN in the area of his ribs. Defendant OFFICER PROFT placed his knee on CHRISTOPHER HINMAN's back and commanded that defendant OFFICER D'ARRIGO tase CHRISTOPHER HINMAN.

23. Defendant OFFICER D'ARRIGO removed his taser, removed the clip and pressed it onto

5

COMPLAINT

the bare neck of CHRISTOPHER HINMAN. Defendant OFFICER D'ARRIGO discharged his taser on CHRISTOPHER HINMAN for a period of not less than three seconds. Plaintiff CHRISTOPHER HINMAN's body shook with great intensity while the taser was discharged on his person.

24. Again, defendant OFFICER D'ARRIGO discharged his taser on the bare neck of CHRISTOPHER HINMAN for a period of not less than three seconds. Again, CHRISTOPHER HINMAN's body shook with great intensity while the taser was discharged on his person.

25. Plaintiff CHRISTOPHER HINMAN then started to hyperventilate and have extreme difficulty breathing. His neighbor, who happened to be a firefighter, intervened, and provided the plaintiff with oxygen. CHRISTOPHER HINMAN started to breathe normally again. CHRISTOPHER HINMAN was then placed in a "wrap."

26. Plaintiff CHRISTOPHER HINMAN had not physically resisted or assaulted the defendants in any way, and the force used against him during the detention and arrest was unnecessary, unreasonable, and excessive.

27. Following the above-described incident, plaintiff CAROLE MIRRASOUL complained to defendant SGT. KNIEVES about the conduct of the defendant officers and each of them. SGT. KNIEVES responded that he would write a favorable report and specifically requested that CAROLE MIRRASOUL not make any complaints to Internal Affairs.

28. At all times during the events described above, the defendant police officers were engaged in a joint venture. The individual officers assisted each other in performing the various actions described and lent their physical presence and support of their office to each other during the said events.

29. As a direct and proximate result of the said acts of the defendant Officers and each of them, plaintiff CHRISTOPHER HINMAN suffered from the following injuries and damages:

 a. Violation of his constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from an unreasonable

6

COMPLAINT

search and seizure of his person;

b. Loss of his personal liberty;

c. Severe physical injuries including but not limited to a broken jaw and severe bruising, requiring the expenditure of money for treatment;

d. Severe emotional trauma and mental anguish;

e. Lost earnings and loss of future earnings.

30. The actions of the defendant police officers violated the following clearly established and well settled federal constitutional rights of CHRISTOPHER HINMAN:

a. Freedom from the unreasonable seizure of his person;

b. Freedom from the use of excessive, unreasonable and unjustified force against his person.

## FIRST CAUSE OF ACTION

### (42 U.S.C. §1983 Against Individual Defendants)

31. Paragraphs 1 through 30 are incorporated by reference as though fully set forth.

32. Plaintiff CHRISTOPHER HINMAN claims damages for the injuries set forth above under 42 U.S.C. §1983 against defendants SAN JOSE POLICE OFFICER C. PROFT (BADGE NO. 2966), SAN JOSE POLICE OFFICER ARCHER (BADGE NO. 3096), SAN JOSE POLICE OFFICER D'ARRIGO (BADGE NO. 3139), SAN JOSE POLICE OFFICER STRUNK (BADGE NO. 2626), SAN JOSE POLICE SERGEANT KNIEVES (BADGE NO. 3144) for violation of his federal constitutional rights under color of law.

## SECOND CAUSE OF ACTION

### (Assault and Battery Against Individual Defendants)

33. Paragraphs 1 through 32 are incorporated by reference as though fully set forth.

34. On or about July 27, 2005, defendant officers assaulted and battered plaintiff CHRISTOPHER HINMAN severely beating and using a taser multiple times on plaintiff's person. Such use of force during the arrest and detention was unnecessary, unreasonable and excessive.

35. As a proximate result of this assault and battery, plaintiff CHRISTOPHER HINMAN

suffered damages as aforesaid.

## THIRD CAUSE OF ACTION

### (Use of Excessive Force Against Individual Defendants)

36. Paragraphs 1 through 35 are incorporated herein by reference as though fully set forth.

37. On or about July 27, 2005, defendant officers severely beat and used a taser multiple times on plaintiff CHRISTOPHER HINMAN person during his detention and arrest, which constituted an unreasonable use of excessive force.

38. As a proximate result of this unreasonable use of excessive force, plaintiff CHRISTOPHER HINMAN suffered damages as aforesaid.

## FOURTH CAUSE OF ACTION

### (Negligence Against Individual Defendants)

39. Paragraphs 1 through 38 are incorporated herein by reference as though fully set forth.

40. Defendant officers and each of them owed plaintiff CHRISTOPHER HINMAN a duty of reasonable care. Defendant officers breached said duty by each of the acts and omissions stated above including but not limited to inappropriate use of a taser and force on the plaintiff's person.

41. As a proximate result of defendant's breach, plaintiff CHRISTOPHER HINMAN suffered damages as aforesaid.

## FIFTH CAUSE OF ACTION

### (42 U.S.C. § 1983 Against CITY OF SAN JOSE)

42. Paragraphs 1 through 41 are incorporated herein by reference as though fully set forth.

43. Prior to July 27, 2005 defendant CITY OF SAN JOSE developed and maintained policies or customs exhibiting deliberate indifference to the constitutional rights of persons in San Jose, which caused the violation of plaintiff CHRISTOPHER HINMAN's civil rights.

44. It was the policy and/or custom of the defendants CITY OF SAN JOSE and San Jose Police Department to inadequately supervise and train its police officers, including defendant officers, thereby failing to adequately discourage further constitutional violations on the part of the police officers. Defendant CITY OF SAN JOSE did not

COMPLAINT

1 | plaintiff CHRISTOPHER HINMAN suffered serious harm.

## SEVENTH CAUSE OF ACTION

### (Negligent Supervision and Training Against CITY OF SAN JOSE)

53. Paragraphs 1 through 51 are incorporated by reference as though fully set forth.

54. At all times during the above described events, defendant officers were acting within the scope of their employment for defendants CITY OF SAN JOSE.

55. Defendant CITY OF SAN JOSE is liable for all negligent acts or omissions of its employees, including but not limited to its managing agents, agents, servants, vendors, independent contractors, insurers and attorneys pursuant to California Government Code section 815.2.

56. Defendant CITY OF SAN JOSE has a duty of its employees to use reasonable care in the training and supervision in the use of excessive force.

57. Defendant CITY OF SAN JOSE breached said duty when the above named employees conduct during the detention and arrest of the plaintiff CHRISTOPHER HINMAN fell below the standard of appropriate police practice.

58. As a direct and proximate result of the negligent acts fo the CITY OF SAN JOSE and or its predecessors, successors, shareholders, officers, directors, employees, managing agents, agents, servants, vendors, independent contractors, insurers, and attorneys, plaintiff CHRISTOPHER HINMAN suffered serious harm.

## EIGHTH CAUSE OF ACTION

### (Negligent Infliction of Emotional Distress - On Behalf of Plaintiff CAROLE MIRRASOUL)

59. Paragraphs 1 through 57 are incorporated by reference as though fully set forth.

60. On or about July 27, 2005 plaintiff CAROLE MIRRASOUL had contemporaneous and sensory observations of her son CHRISTOPHER HINMAN being beaten, struck and tased by the defendant officers and each of them both inside and outside of her residence.

61. Plaintiff CAROLE MIRRASOUL's contemporaneous and sensory observations of CHRISTOPHER HINMAN's condition (including violent bodily trembling and

hyperventilation from two direct taser shots on his neck) and the acts and omissions of defendants alleged herein caused plaintiff CAROLE MIRRASOUL to experience and suffer extreme and severe shock to her nervous system and severe mental and emotional distress.

62. Injuries to plaintiffs CAROLE MIRRASOUL and CHRISTOPHER HINMAN were reasonably foreseeable and defendants and each of them knew or should have known of the foreseeable risk and high probability that their acts, omissions and negligence alleged herein would, or could cause plaintiff CAROLE MIRRASOUL to suffer from extreme emotional distress and conscious pain and suffering.

WHEREFORE, Plaintiff requests that this court:

1. Award compensatory damages to plaintiff against the defendants jointly and severally;
2. Award special damages including but not limited to medical expenses according to proof;
3. Award damages for loss of earnings and loss of future earning capacity according to proof;
4. Interest on all damages at the legal rate;
5. Award the costs of this action to the plaintiff;
6. Award reasonable attorney's fees and costs to the plaintiff on all eight causes of action; and
7. Such other and further relief that the Court deems proper.

Dated: July 27, 2007

PAGKAS LAW FIRM

CHRISTOPHER J. D'ANJOU
Attorneys for Plaintiffs

11

COMPLAINT

**Demand For Jury Trial**

Plaintiff hereby demands trial by jury.

PAGKAS LAW FIRM

_____
CHRISTOPHER J. D'ANJOU
Attorneys for Plaintiffs

12

COMPLAINT